IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2023 Fall Term

_____

No. 22-ICA-208

_____

FILED

**December 8, 2023**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

FORD MOTOR COMPANY
Defendant Below, Petitioner,

v.

ANGEL ELLEN TYLER, AS ADMINISTRATOR OF THE ESTATE OF BREANNA
KRISTEN BUMGARNER,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Kanawha County
Honorable Joanna I. Tabit, Judge
No. 18-C-182

REVERSED AND REMANDED
_____

Submitted: September 19, 2023
Filed: December 8, 2023

Jessica Ellsworth, Esq.
Hogan Lovells US LLP
Washington, D.C.
*Pro Hac Vice*

Michael Bonasso, Esq.
Jason A. Proctor, Esq.
Flaherty Sensabaugh & Bonasso,
PLLC
Charleston, West Virginia
Counsel for Petitioner

R. Graham Esdale, Jr., Esq.
D. Michael Andrews, Esq.
T. Preston Moore II, Esq.
Beasley, Allen, Crow, Methvin, Portis
& Miles, P.C.
Montgomery, Alabama
*Pro Hac Vice*

Natalie Atkinson, Esq.
Philip J. Combs, Esq.
Thomas Combs & Spann, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae,
Product Liability Advisory Council, Inc.

Stephen B. Farmer, Esq.
Brian E. Bigelow, Esq.
Robert D. Cline, Jr, Esq.
Robert A. Campbell, Esq.
Farmer, Cline & Campbell, PLLC
Charleston, West Virginia
Counsel for Respondent

JUDGE SCARR delivered the Opinion of the Court.

SCARR, JUDGE:

Petitioner, Ford Motor Company ("Ford") appeals the Circuit Court of Kanawha County's denial of its motion for judgment as a matter of law, or alternatively, for a new trial, after the jury found that it was negligent in designing the subject 2014 Ford Mustang in a way that failed to prevent leakage from the brake reservoir which caused Ford to be 99% at fault for the plaintiff's decedent's death in a subsequent crash. On appeal Ford argues that it was entitled to judgment as a matter of law on the brake fluid reservoir claim because the evidence at trial was legally insufficient to sustain the verdict, or alternatively, that it was entitled to a new trial as to the brake fluid reservoir claim and allocation of fault.[1]

For the reasons mentioned below, this Court concludes that an alternative feasible design is required for a negligent design products liability claim in West Virginia. Therefore, this Court reverses the September 29, 2022,[2] order entered by the Circuit court of Kanawha County and remands this case for a new trial.

---

[1] This Court acknowledges and appreciates the amicus brief filed by Products Liability Advisory Council, Inc. in support of Ford's argument pertaining to the requirement of an alternative feasible design in a negligent design claim.

[2] Petitioner refers to this order as having been entered on September 28, 2022, the date the order was signed. This order was entered by the circuit court clerk on September 29, 2022, which is the date that will be used by this Court. *See* Syl. Pt. 4, *State v. Mason*, 157 W.Va. 923, 205 S.E.2d 819 (1974) ("In a proceeding governed by the Rules of Civil Procedure, a judgment rendered in such proceeding is not final and effective until entered

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a 2016 car accident that resulted in the death of the driver of a 2014 Ford Mustang when it was struck in the front driver's side by a 1989 Toyota pick-up truck on a narrow, winding, two-lane road in Roane County, West Virginia. Sixteen-year-old Anna Errickson was driving the truck at approximately 62 mph when she drove off the side of the road, overcorrected, crossed the center line, and crashed into nineteen-year-old Breanna Bumgarner's Mustang, which was traveling at approximately 57 mph in the opposite direction. The crash led to a fire in the engine bay of the Mustang that progressed into the occupant compartment. Ms. Bumgarner was unable to exit or be extricated from the vehicle and perished in the fire.

Respondent, Ms. Bumgarner's mother, also the administrator of her estate, Angel Ellen Tyler, filed strict liability and negligence claims for defective design against Ford and negligence and vicarious liability claims against Ms. Errickson as the driver of the truck, and her parents, as owners of the truck, in Kanawha County Circuit Court. She alleged two design defects in the 2014 Mustang: first, that the design of the occupant compartment was defective because it allowed too much crush, which prevented Ms.

---

by the clerk in the civil docket as provided in Rule 58 and Rule 79(a) of the Rules of Civil Procedure.").

Bumgarner from exiting the vehicle after the crash;[3] and second, that the design of the brake fluid reservoir was defective because it was inadequately protected, which allowed the release of brake fluid that ignited the fire.

The evidence demonstrated that the closing speed of the two vehicles exceeded 100 mph, causing nearly four feet of crush in the front of the Mustang, and the Mustang's change in velocity ("Delta V") — a tool used to evaluate accidents — was 51 mph, which exceeded the 98th percentile for accidents that resulted in death or serious injuries. Experts for both parties recognized the need for vehicles to deform as a means to manage crash forces. Ford asserted that in a frontal crash, these forces are "easier to manage" because the accident engages the "majority of the frame structure." In this accident, however, the 100-mph closing speed and 40-degree angle of impact created "very excessive forces," allowing Errickson's truck to override the Mustang's structure, and the Mustang had to manage and absorb far more of the energy in the accident.

---

[3] The occupant compartment claim is not before this Court because the jury found Ford not liable on that claim.

The design standards for the 2014 Mustang were established in 2001.[4] The brake fluid reservoir in the Mustang is attached to the master cylinder, which is bolted to the brake booster at the rear of the engine compartment on the driver's side. When a driver presses the brakes, it compresses a piston within the master brake cylinder, pushes brake fluid out of the master brake cylinder, and delivers braking power to each of the wheels. Ford presented testimony that the "safest and most effective way" to design the braking system is to "keep th[e] piston in line with where the brake pedal is" — i.e., directly in front of the driver. According to the respondent's fire expert, the deformation in the front of the Mustang from the crash compromised the reservoir and the brake fluid leaked, vaporized, and ignited, resulting in a post-collision fire that eventually reached the occupant compartment, where Ms. Bumgarner was trapped and died as a result of damage from the crash.[5]

---

[4] The 2014 Mustang was part of Ford's A197 program which included Mustangs manufactured and sold between model years 2005 and 2014. As required by all vehicles sold in the United States, the 2014 Mustang complied with all applicable Federal Motor Vehicle Safety Standards, which includes the federal brake system standard as well as safety standards for occupant crash protection and fuel system integrity standards.

[5] At trial, it was undisputed that Ford complied with every applicable regulatory and industry standard when it designed the 2014 Ford Mustang. Respondent's expert conceded that no vehicle on the market can prevent a fire in all collisions, especially one at 100 mph closing speed, and that no manufacturer can prevent the release of brake and other engine compartment fluids in all crashes.

The case proceeded to a jury trial in 2022. Respondent presented evidence from an accident reconstruction expert; a fire and explosion analyst; a forensic pathologist; an occupant protection, biomechanics, and crashworthiness expert; as well as several fact witnesses.

Before trial, Ford moved to exclude respondent's expert Dr. Chandra K. Thorbole's computer simulation and related testimony. Ford argued that the conditions Dr. Thorbole set for his simulations differed substantially from the conditions of Ms. Bumgarner's accident and therefore the simulation was inadmissible. In a pre-trial ruling, the circuit court initially agreed with Ford and excluded respondent's simulation evidence. The court found that Dr. Thorbole "conducted computer simulations for the stated purpose of demonstrating that an alternative design would have prevented the injuries in this case" and that "Thorbole acknowledged that his computer simulations did not reflect conditions that were substantially similar to this crash."[6]

However, during trial, respondent's counsel expressed his intent to have Dr. Thorbole testify about his previously excluded computer simulations. Ford objected to this

_____

[6] Dr. Thorbole first suggested that an alternative design Ford could have used was a "high strength strut" made of boron steel that the 2014 Mercedes model placed between its shock tower and cowl panel, and also the 1965 Mustang used. Further, Dr. Thorbole testified that an alternative feasible design existed based on his computer simulations he constructed.

testimony as being in direct contravention of the court's pre-trial ruling. The court subsequently determined that pursuant to *Illosky*,[7] Dr. Thorbole was permitted to discuss and offer his opinions predicated on the excluded simulations so long as the simulations themselves were not admitted as trial exhibits. The circuit court concluded that *Illosky* permits courts to admit expert testimony based in part on inadmissible simulations and just exclude the simulations themselves from being trial exhibits. The court explained that even though Dr. Thorbole's simulations were inadmissible, he could still rely on and testify about them because the simulations were not intended to be exactly identical, but were a simulation of an alternative design, and his testimony about the tests was relevant, probative, and admissible under *Illosky*.[8]

After the close of evidence, at the charge conference, the court considered the parties' joint proposed jury instructions. On the strict liability claim, respondent did not object to a proposed instruction that strict liability design claims involve a design defect element, and that proof of an alternative feasible design is a threshold requirement for

---

[7] *Illosky v. Michelin Tire Corp.*, 172 W. Va. 435, 307 S.E.2d 603 (1983).

[8] "In order for evidence of tests or experiments to be admissible, the essential conditions at the time of the experiment must be substantially similar to those existing under the occurrence, but it is not necessary that the conditions be identical in every respect." Syl. Pt. 16, *Illosky v. Michelin Tire Corp.*, 172 W. Va. 435, 307 S.E.2d 603 (1983).

establishing a design defect.[9] However, before closing arguments the next day, respondent voluntarily dismissed her strict liability design defect claim and announced that she would only pursue a theory of negligent design. Respondent argued that Ford, as the designer of the 2014 Mustang, negligently designed the car. Respondent claimed that she was only presenting one fundamental theory to the jury: that the car was not reasonably safe for its intended use because it did not reasonably prevent Ms. Bumgarner's death. Ford's position was that there were two distinct design defect theories – the design of the brake fluid reservoir and entrapment based on the occupant compartment claim. Respondent requested that the circuit court strike all instructions regarding strict liability and all references to an alternative feasible design. Further, respondent requested that the circuit court prevent Ford from making any reference to respondent's lack of evidence showing a reasonable alternative design in closing arguments.

In making its determination, the circuit court acknowledged that an alternative feasible design is required in negligent design defect claims in an overwhelming majority of jurisdictions, but, based in large part on Judge Goodwin's opinion in *Mullins v. Johnson & Johnson*, 236 F.Supp. 3d 950 (S.D. W. Va. 2017), agreed to remove from the

---

[9] The parties also agreed on an instruction on the requirements and methods to prove an alternative feasible design.

jury instructions any requirement that respondent prove an alternative feasible design in showing a defect for her negligent design claim.

The jury was instructed as to the brake fluid reservoir claim and entrapment as separate theories and was asked to decide each issue separately on the verdict form. The jury returned a verdict on May 17, 2022, finding that Ford "was negligent in designing the 2014 Ford Mustang with a defect because it was not reasonably safe in preventing leakage from the brake fluid reservoir in this accident," and that "this negligence was a proximate cause of Ms. Bumgarner's death." It also found that Ford was not "negligent in designing the 2014 Mustang with a defect because it was not reasonably safe in preventing Ms. Bumgarner's entrapment in this accident." The jury allocated 99% of the fault to Ford and 1% to Anna Errickson.

On June 2, 2022, the circuit court entered judgment against Ford for $6,930,000 based on the jury verdict in favor of respondent. On September 29, 2022, the court denied Ford's post-trial motion for judgment as a matter of law or in the alternative for a new trial. It is from that order that Ford now appeals. On September 19, 2023, this Court heard Rule 20 Oral Argument by respective counsel in person.

## II. STANDARD OF REVIEW

"The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure . . . is de novo." Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the West Virginia Rules of Civil Procedure [], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

*Id.* at 5, 680 S.E.2d at 20.

This Court reviews a circuit court's denial of a motion for a new trial under an abuse of discretion standard. Syl. Pt. 3, *In re State 14 Pub. Bldg. Asbestos Litig.*, 193 W. Va. 119, 454 S.E.2d 413 (1994).

> """The ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218

9

(1976).' Syllabus point 2, *Estep v. Mike Ferrell Ford Lincoln–Mercury, Inc.*, 223 W.Va. 209, 212, 672 S.E.2d 345, 348 (2008)." Syl. Pt. 2, *CSX Transp., Inc. v. Smith*, 229 W.Va. 316, 320, 729 S.E.2d 151, 155 (2012).

Syl. Pt. 2, *Grimmett v. Smith*, 238 W. Va. 54, 792 S.E.2d 65, 66–67 (2016).

"As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

## III.    DISCUSSION

On appeal Ford argues three assignments of error: (1) that Ford is entitled to judgment as a matter of law or a new trial based on the circuit court's error in holding that West Virginia law does not require plaintiffs in a negligent design case to prove the existence of an alternative feasible design; (2)  that Ford is entitled to a new trial based on the circuit court's error in allowing respondent's expert, Dr. Thorbole, to testify about and rely upon computer simulations that he agreed did not reflect substantially similar conditions to Ms. Bumgarner's crash; and (3) that Ford is entitled to judgment as a matter of law for additional reasons beyond the lack of a feasible alternative design because respondent offered no evidence at trial that would sustain a jury finding that Ford failed to exercise reasonable care in designing the 2014 Mustang's brake reservoir or that Ford's

10

design of the brake reservoir was a proximate cause of Ms. Bumgarner's death. However, before considering the assignments of error raised by Ford, we must first generally discuss products liability law in West Virginia.

### A. West Virginia Products Liability Case Law

The Supreme Court of Appeals of West Virginia ("SCAWV") has consistently held:

> Product liability actions may be premised on three independent theories – strict liability, negligence, and warranty. Each theory contains different elements which plaintiffs must prove in order to recover. No rational reason exists to require plaintiffs in product liability actions to elect which theory to submit to the jury after the evidence has been presented when they may elect to bring suit on one or all of the theories.

Syl. Pt. 6, *Illosky v. Michelin Tire Corp.*, 172 W. Va. 435, 307 S.E.2d 603 (1983). This has additionally been enumerated in the Pattern Jury Instructions ("PJI") for product liability claims in West Virginia, which permit three independent theories in product liability actions: "(1) That there was a defect in the product [strict liability]; (2) That the defendant was negligent [negligence]; and/or (3) That the defendant breached a warranty covering the product [warranties]." W. Va. P.J.I. § 401 (2017) (citing Syl. Pt. 6, *Illosky*, 172 W. Va.

435, 307 S.E.2d 603 (1983)). Importantly, the PJI are not mandatory,[10] and while they denote different elements for each cause of action, this Court concludes as discussed below that even under a negligent design defect claim, proving an alternative feasible design is required.

In this State's seminal case regarding strict liability under a products liability claim in *Morningstar v. Black & Decker*, 162 W. Va. 857, 253 S.E.2d 666 (1979), the SCAWV recognized three different types of defective products, stating that they "may fall into three broad, and not necessarily mutually exclusive categories: design defectiveness; structural defectiveness; and use defectiveness."[11] *Id.* at 888, 253 S.E.2d at 682. The

---

[10] "These are pattern jury instructions that were written to help trial judges and lawyers instruct the jury in a civil case. THEY ARE NOT BINDING ON THE TRIAL JUDGE…On appeal, the Supreme Court is not bound by the correctness of these pattern instructions…." W. Va. P.J.I. Preface. Even though the PJI were published under the guidance of a then Supreme Court Justice, they are not mandatory and do not necessarily reflect the current state of the law in West Virginia.

[11] The West Virginia Pattern Jury Instructions articulate it as follows:

> A product is defective if it is not reasonably safe for its intended use. A product defect may be established by evidence proving:
> 1. That there was a manufacturing defect, meaning the product differed from the manufacturer's intended result or differed from other units in the same product line; or
> 2. That there was a design defect, meaning the product failed to perform safely when used in a reasonably intended manner; or

12

SCAWV in *Morningstar* adopted the standard of reasonable safety to establish a product defect.[12] *Id.* In doing so, the SCAWV stated:

> whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

*Id.* at 888, 253 S.E.2d at 683. The word 'unsafe' conveys a standard that the product is "to be tested by what the reasonably prudent manufacturer would accomplish in regard to the safety of the product, having in mind the general state of the art of the manufacturing process, including design, labels and warnings, as it relates to economic costs, at the time the product was made." *Id.* at 888, 253 S.E.2d at 683-84. Further, the SCAWV has held that "a jury may consider the federal safety standards, but that compliance with those

---

3. That there was a use defect, as a result of inadequate warnings, instructions, or labels.
   In evaluating if a product is reasonably safe for its intended use, you are instructed that a manufacturer is not required to [design/manufacture/sell] the safest possible product, or a safer product than the one it did [design/manufacture/sell] so long as the product was reasonably safe for its intended use.

W. Va. P.J.I. § 403 (citation omitted).

[12] "In deciding whether or not the [product] was reasonably safe for its intended use, you must measure its reasonable safeness in comparison to what a reasonably prudent manufacturer's standards should have been at the time the [product] was made. In deciding this question, you may consider the general state of the art of the manufacturing process followed by [the defendant] and other similar manufacturers in [the same year]." W. Va. P.J.I. § 404.

13

standards is not conclusive proof that the design of the product was reasonable." *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc*, 223 W. Va. 209, 220, 672 S.E.2d 345, 356 (2009) (citation omitted). Strict liability "is designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the principal basis of liability." *Id.* at 878, 253 S.E.2d at 677. The language imparted from *Morningstar* reflects this State's formulation of the "risk-utility test," under which product defectiveness is determined by balancing a product's risk of causing harm against the costs of reducing that risk. *Id.* at 887, 253 S.E.2d at 682 ("We believe that a risk/utility analysis does have a place in a tort product liability case.").

Morningstar is clear that when evaluating a product under a strict liability design defect claim, there must be some reference to a design standard outside of the design in question. *See Morningstar*, 162 W. Va. 857, 253 S.E.2d 666. Further, this proposition was upheld in *Church v. Wesson*, 182 W. Va. 37, 385 S.E.2d 393 (1989), where the SCAWV found that proof of a feasible alternative design is a prima facie element for any design defect claim under strict liability. *Id.* at 40, 385 S.E.2d at 396 (upholding a direct verdict for the defendant under strict liability because plaintiff failed to establish a feasible alternative design).

14

However, despite these decisions, this Court is aware of the certified question currently before the SCAWV in *Shears v. Ethicon, Inc.,* 64 F.4th 556 (4th Cir. 2023), which asks the court if an alternative feasible design is required under a strict liability claim in the State of West Virginia. We acknowledge that the court in *Shears* does not believe that there is sufficient law supporting the proposition that an alternative feasible design is required under a strict products liability claim; however, unless and until the SCAWV decides otherwise, we disagree. Based on the various foregoing cases mentioned, an alternative feasible design is required under West Virginia strict products liability law, and therefore in such a claim an appropriate instruction should be given to the jury.[13] *See Nease v. Ford Motor Co.*, 848 F.3d 219, 234 (4th Cir. 2017) ("[W]e agree with Ford that *Morningstar* 'can only be read to require the production of evidence on reasonable alternative design, to gauge what 'should have been.'" (citing Restatement (Third) of Torts: Prod. Liability § 2, Reporter's Note (1998))).

On the other hand, the pattern jury instructions for West Virginia negligent product liability claims require a showing that the defendant was negligent in designing

---

[13] Further, although not mandatory, the PJI explicitly state in applying the risk-utility test, which is required to find a defendant liable under a strict liability claim, the jury should consider "the feasibility of an alternative, safer design at the time of manufacture…." W. Va. P.J.I. § 410.

15

the product. *See* W. Va. P.J.I. § 424. In order to establish a claim for negligence in products liability, a plaintiff must merely prove:

(1) the defendant [designed] the product;

(2) the defendant was negligent in [designing] the product;

(3) the plaintiff was injured; and

(4) the defendant's negligence proximately caused the plaintiff's injury.

*Id.* (Citation omitted).

"Negligence is the failure to use reasonable care." *Id.* at § 425 (citing *Strahin v. Cleavenger*, 216 W. Va. 175, 183, 603 S.E.2d 197, 205 (2004); *Honaker v. Mahon*, 210 W. Va. 53, 58, 552 S.E.2d 788, 793 (2001)). "A [defendant] is negligent if [it] fails to use the amount of care in [designing] the product that a reasonably careful [designer] would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." *See Id*. "In determining whether [the defendant] used reasonable care, [a jury] should balance what [the defendant] knew or should have known about the likelihood and seriousness of potential harm from the product against the burden of taking safety measures to reduce or avoid the harm." *Id.*

While the PJI do not state that an alternative feasible design is a required element on which a jury is to be instructed in a negligent design claim, based upon its

16

thorough review of the prevailing case law, this Court cannot conceive of a factual scenario where an alternative feasible design would not be a necessary element in finding that the defendant was negligent in a design defect claim.[14] Additionally, the SCAWV has considered whether a jury instruction properly stated the law in a negligent design products liability claim. *See Stone v. United Engineering*, 197 W. Va. 347, 475 S.E.2d 439 (1996). In *Stone*, the jury was asked to decide whether the defendant breached a duty to make the design of its conveyor system reasonably safe for its foreseeable uses. *See Id.* The trial court instructed the jury that "you may consider the severity and magnitude of the risk of harm posed by the conveyor system and the *ease with which the risk of harm could have been avoided or reduced by redesigning* the system so as to make it reasonably safe."[15] *Id.* at 363, 475 S.E.2d at 445 (emphasis added). The SCAWV found no error in this jury instruction. Thus, while it may have been unintentional, the SCAWV in *Stone* arguably implicitly adopted the requirement of an alternative feasible design instruction in negligent design claims.

---

[14] Notably, during oral argument, counsel for both parties were asked if they could point to a situation where an alternative feasible design would not be introduced as evidence in a negligent design claim; neither counsel could articulate such a situation.

[15] The beginning portion of the jury instruction stated "[t]he focus in design negligence cases is not on how the system is meant to function, but whether the system was designed with reasonable care to eliminate reasonably foreseeable and avoidable dangers." *Id.* at 363, 475 S.E.2d at 445.

Further, in Judge Goodwin's decision in *Mullins v. Johnson & Johnson*, 236

F. Supp.3d 940 (S.D. W. Va. 2017), he stated the law as follows:

> The defendants argue that an alternative feasible design is required for proving the plaintiff's cases under both strict liability and negligence…As I have already pointed out, the West Virginia Supreme Court has held that negligence and strict liability claims have different elements. Syl. Pt. 6, *Illosky*, 307 S.E.2d at 605. Moreover, the PJI even separates the products liability instructions based on negligence, strict liability, and breach of warranties theories, establishing different elements of proof for each. Sections 424 and 425 of the PJI state the applicable standards for negligence in a products liability case, and absent from these instructions is any element of proof regarding an alternative, feasible design. *See* W. Va. P.J.I. §§ 424, 425. Unlike in strict liability, where the defective condition of the product is the principal basis of liability, negligence focuses on the conduct of the manufacturer. Syl. Pt. 3, *Morningstar*, 162 W. Va. 857, 253 S.E.2d 666 (1979) ("The cause of action covered by the term 'strict liability in tort' is designed to relieve the plaintiff from proving that the manufacturer was negligent in some particular fashion during the manufacturing process and to permit proof of the defective condition of the product as the principal basis of liability."); *see also* 63 Am. Jur. 2d Products Liability § 519 ("Strict liability looks at the product itself and determines if it is defective, whereas negligence looks at the act of the manufacturer and the court determines if the manufacturer exercised ordinary care in design and production."). *Certainly, the existence of an alternative, feasible design is relevant to the manufacturer's conduct, but a requirement to establish an alternative, feasible design is simply not among the requisite elements under a negligence products liability theory.*

18

*Mullins*, 236 F.Supp. 3d at 944 (emphasis added).[16] While we conclude that Judge Goodwin incorrectly interpreted West Virginia law, he himself even acknowledged that an alternative feasible design will always be relevant in determining if a product was designed negligently.

### B. The Third Restatement's Approach

The American Law Institute adopted the Restatement Third of Torts, Products Liability in 1998. Consistent with the SCAWV's decision in *Morningstar*, 162 W. Va. 857, 253 S.E.2d 666, the Third Restatement identifies three categories of product defects: manufacturing defects, design defects, and failure to warn. Rest. 3d. Torts: Prod. Liab. § 2(a), (b) & (c) (1998). The Third Restatement identifies these categories as follows:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

---

[16] Notably, it appears that there may be a conflict in the federal courts in trying to decide this precise issue. *See Shears v. Ethicon*, No. 1:20CV264, 2022 WL 1417317 at *2 (March 16, 2022) (denying motion for judgment as a matter of law on a negligent design claim where plaintiff had offered evidence of an alternative feasible design).

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instruction or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Prod. Liab. § 2 (1998).

Subsection (b) adopts a reasonableness ("risk-utility balancing") test as the standard for judging the defectiveness of product designs. *Id.* at cmt. d. "More specifically, the test is whether a reasonable alternative design would, at reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the omission of the alternative design by the seller or a predecessor in the distributive chain rendered the product not reasonably safe." *Id.*

The Restatement Third of Torts: Product Liability § 2 comment n, states that "[n]egligence rests on a showing of fault leading to product defect. Strict liability rests merely on a showing of product defect….What must be shown under either theory is that the product in question did, in fact, have a [design] defect at [the] time of sale that contributed to causing the plaintiff's harm." *Id.* Further, the comment f under the Restatement goes on to state:

The proposition that, in order to determine that a design is not reasonably safe, the alternative must contribute to greater overall safety needs no citation; it is axiomatic. If the alternative design proffered by the plaintiff does not make the product safer, let alone if it makes it more dangerous, such an alternative is not reasonable. In such a case the fact that the alternative design would have avoided injury in a specific case is of no moment.

Rest. 3d of Torts: Prod. Liab. § 2, cmt. f (1998).

Therefore, under the Third Restatement's approach, a product "is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller…and the omission of the alternative design renders the product not reasonably safe…." *Id.* at § 2(b). This alternative design requirement provides the jury with an objective basis to evaluate the feasibility of the design specifications. *Id.* at comment d. (design defect "requires reference to a standard outside the [design] specifications"). Thus, under the Third Restatement, an alternative feasible design is a prerequisite to any claim sounding in tort, including one based on strict liability or negligence. *Id.* ("doctrinal tort categories such as negligence or strict liability may be utilized in bringing the claim").[17]

---

[17] Additionally, under the Third Restatement, a reasonable alternative design is not the only method for establishing a design defect. Specifically, a plaintiff is not required to prove an alternative design where one proceeds under a theory of product malfunction or alleges that the product design violates an applicable government safety standard. *See* Rest. Third. Prod. Liab. §§ 3, 4. However, here, neither of these other methods are applicable,

21

### C. Arguments Presented by the Parties Herein

First, Ford argues that an alternative feasible design is required for proving respondent's case under both strict liability and negligence theories. Ford asserts that proof of an alternative feasible design is necessary to show that a product's design is defective, and proof of a design defect is also indispensable for a negligent design claim. Essentially, Ford's argument rests on the fact that under both strict liability and a negligence claim the risk-utility test is applied, thus both theories must require evidence of an alternative feasible design. Further, Ford argues, at the very least, it is entitled to a new trial under the correct legal standard; asserting that the circuit court erred by removing all alternative feasible design language from the jury instructions.

In response, respondent argues that under West Virginia law, a negligent design claim under a product liability theory does not require proof of an alternative feasible design. Respondent asserts that under West Virginia law a negligent product liability theory does not require proof of a defective product design, because unlike strict liability, negligence turns on the defendant's conduct and whether, in this case, Ford used the amount of care in designing the 2014 Mustang that a reasonably careful designer would

---

because respondent in this case proceeded under a negligent design theory, and it was undisputed that Ford complied with all applicable standards in designing the 2014 Mustang.

22

use in similar circumstances. *See* W. Va. P.J.I. §§ 424, 425 (citations omitted). Further, respondent relies on Judge Goodwin's decision in *Mullins*, 236 F.Supp.3d 940, 946 (S.D. W. Va. 2017), where the court stated, "a requirement to establish an alternative, feasible design is simply not among the requisite elements under a negligence products liability theory." *Id.* (citation omitted).[18]

Based upon our review of the prevailing case law, relevant sources, and the record herein, we agree in part with Ford. We find it persuasive that a vast majority of states throughout the United States have adopted the Third Restatement's approach in negligent design products liability claims. The overwhelming majority of states require a plaintiff to prove an alternative feasible design to prevail on a negligent design claim. *See Beech v. Outboard Marine Corp.*, 584 So.2d 447, 450-51 (Ala. 1991) (defectiveness under negligent design purposes is established by proving "that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]"); *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 537-38, 870 S.E.2d 739, 746 (Ga. 2022) ("Under [either strict liability or negligence] the factfinder performs a 'risk utility analysis,'

---

[18] Additionally, respondent argues that even if an alternative feasible design is required under West Virginia law, they presented evidence that an alternative feasible design did exist based on Dr. Thorbole's simulations and testimony. However, because we conclude that an alternative feasible design is required to prove a negligent design products liability claim, the jury was not properly instructed on the requisite element's respondent had to prove. The jury instructions in this case did not include or even mention "an alternative feasible design", and therefore, they were not an accurate recitation of the law.

23

assessing 'the reasonableness of choosing from [] various alternative product designs' by asking whether 'the risk of harm outweighs the utility of a particular design' to determine whether 'the product is not as safe as it should be.'" (citation omitted)); Ohio Rev. Code § 2307.75(F) (2004) ("A product is not defective in design…if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design…was not available that would have prevented the harm…without substantially impairing the usefulness or intended purpose of the product."); *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2005) ("Kentucky law…stands for the proposition that design defect liability requires proof of a feasible alternative design."); *Spear v. Atrium Med. Corp.*, 621 F.Supp.3d 553, 559 (E.D. Pa. 2022) (unless proceeding under the theory that a product was too dangerous to market, plaintiffs will "ultimately bear the burden of proving a feasible alternative design" in a design defect claim); *Branham v. Ford Motor Co.*, 390 S.C. 203, 225, 701 S.E.2d 5, 17 (S.C. 2010) ("[I]n a product liability design defect action, the plaintiff must present evidence of a reasonable alternative design."); *Evans v. Nacco Materials Handling Group. Inc.,* 810 S.E.2d 462, 471 (Va. 2018) ("a design is not objectively unreasonable unless the plaintiff can show that an alternative design is safer overall than the design used by the manufacturer.").

We find the Third Restatement's approach to design defect claims under strict liability and negligence to be consistent with West Virginia's approach and this Court adopts the Third Restatement in this regard. Under a design defect claim, whether it is

24

brought under strict liability or negligence, evidence of an alternative feasible design is required. This Court acknowledges that this now gives rise to the question of what, if any, difference there is between strict liability and negligence in a design defect claim. However, because an alternative feasible design would always be key evidence of negligence or strict liability, this Court concludes that under a negligent design defect claim, proof of an alternative feasible design is required.

In other words, the general rule in design defect products liability claims brought under negligence is that the plaintiff is required to show an alternative feasible design. However, this Court recognizes that there may be some exceptions to this general rule, including but not limited to a strict liability malfunction design claim, or a claim that a product is inherently unsafe and should not have been put on the market in the first place.[19] Further, while an alternative feasible design is required for negligent design claims, it does not apply to negligent manufacturing claims or function/use or warning claims.

Given our conclusion regarding the necessity of a showing of an alternative feasible design, and as the jury in the underlying case was not properly instructed to

---

[19] In the latter exception noted above, the plaintiff is essentially arguing that there is no alternative feasible design which is safer because the product on the market is unequivocally unsafe and should have never been put on the market.

consider an alternative feasible design as an element of respondent's negligence claim, we reverse the jury verdict against Ford and remand this case for a new trial consistent with this Court's opinion. To the extent that a plaintiff is bringing multiple claims under the different theories previously discussed, we note that it is axiomatic for the judge to present the jury with instructions as to each claim which clearly define the evidentiary requirements for each claim presented in the case.

As to Ford's contention that the trial court erred in denying its motion for judgement as a matter of law or a new trial, we agree, but only inasmuch as we conclude that the jury was not properly instructed. We recognize the plethora of evidence before the jury to support its verdict, including the testimony of Dr. Thorbole.[20] However, a jury considering such evidence must be properly instructed.

The SCAWV has held that:

---

[20] While raised by Ford as an assignment of error, we find no abuse of the trial court's discretion in permitting Dr. Thorbole to testify regarding computer simulations that were themselves inadmissible. We remind the parties of the long-standing precedent of the SCAWV that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). Here, we find no abuse of discretion. Ford was permitted to cross-examine Dr. Thorbole regarding the simulations and argue this inapplicability of the same to the facts of the underlying case.

the formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the jury instructions given as a whole are accurate and fair to both parties. Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W. Va. 97, 459 S.E.2d 374 (1995).

Syl. Pt. 3, *Keese v. Gen. Refuse Serv. Inc.*, 216 W. Va. 199, 604 S.E.2d 499 (2004). In the instant case, we conclude that the jury was not properly instructed as to the necessity of finding of an alternative feasible design, which was contrary to the law and fairness due to both parties. Accordingly, we reverse the verdict against Ford and remand this case to the trial court for a new trial.

## IV.    CONCLUSION

For the foregoing reasons, this Court reverses the Circuit Court of Kanawha County's September 29, 2022, order, and remands this case for a new trial.

Reversed and Remanded.

27